UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-49-HRW

GARY S. TUNNICLIFFE                                                PETITIONER

VS:                 **MEMORANDUM OPINION AND ORDER**

BUREAU OF PRISONS, ET AL.                               RESPONDENTS

      Petitioner Gary S. Tunnicliffe, who is confined in the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. He has paid the requisite filing fee.

      This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

      This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

RESPONDENT

      The named respondents are: (1) the Bureau of Prisons ("BOP"); (2) Harley Lappin, Director of the BOP; and (3) Brian Patton, the Warden of FCI-Ashland.

## CLAIMS

The petitioner claims that the respondent and the BOP have violated his rights under the Fifth Amendment, which guarantees due process of law, and the Ex Post Facto Clause[1] of the United States Constitution. He alleges that the BOP has wrongly construed 18 U.S.C. §§3621(b) and 3624(c), and that as a result, the BOP has improperly reduced his term in a Community Corrections Center ("CCC") by approximately ninety days.

## PETITIONER"S LEGAL ARGUMENTS

The petitioner states that he is currently approved for a CCC placement on August 7, 2006, allowing him only 88 days in a CCC. He contends that his transitional needs justify a longer term of confinement in a CCC. He identifies his transitional needs as being the father of five children and six grandchildren. He states that FCI-Ashland is more than 500 miles from his home and that he has not seen his family since his 37-month term of incarceration began on January 27, 2004. He states that after his release he will require time in which to restore his expired Commercial Driver's License Certification and secure gainful employment.

Petitioner contends that based upon how his sentence is computed, he should have received between 98 and 112 days in either a CCC or home confinement, effective on May 8, 2006 (now past). He argues that the BOP failed to fully investigate and consider his transitional needs, and that BOP policy requires the BOP to place federal inmates in a CCC during the last 10% of their sentence term. As authority for his claims he cites several cases, including but not limited to *Scott v. Federal Bureau of Prisons*, 2004 WL 1065772 (D. N.J. 2004) (injunctive relief granted to

---

[1] *See* U.S. Const. Art. 1, §9 ("No ... ex post facto Law shall be passed."). This clause forbids Congress from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes *additional* punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S. Ct. 960, 67 L. Ed.2d 17 (1981) (emphasis added).

plaintiff-prisoner seeking to compel BOP to release him to a CCC pursuant to BOP policy before change in BOP's policy); *Greenfield v. Menifee*, 2003 WL 23181269 (S. D. N.Y. October 31, 2003); and *Cioffoletti v. Federal Bureau of Prisons*, 2003 WL 23208216 (E.D. N.Y. Nov. 6, 2003) (BOP was directed to transfer prisoner to CCC forthwith).

## RELIEF REQUESTED

The petitioner seeks emergency relief in the form of an order directing the BOP to immediately release him into a CCC. He contends he should not have to wait until August 7, 2006, to be released into a CCC.

## DISCUSSION
### 1. Exhaustion

As an initial matter, the petitioner has not demonstrated that he pursued the requisite administrative remedies set forth in 28 C. F.R. §542.10-16 (2006). Prisoners who seek relief under 28 U.S.C. §2241 are required to exhaust judicially created administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition); *United States v. Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

The administrative remedies for federal prisoners bringing a 28 U.S.C. §2241 petition are set forth in 28 C. F.R. §§542.10-16 (1997). Section 542.13(a) demands that an inmate first informally present his complaint to the staff (BP-8 form) before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint with staff, then he may submit to the

3

warden a formal written complaint (BP-9) within fifteen (15) calendar days of the date on which the basis of the complaint occurred. §542.13(b).

An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. 28 C.F.R. §542.15.

The BOP's response times are established in 28 C.F.R. §542.18. "Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*.

The instant petitioner has apparently completely short-circuited the exhaustion process, alleging in his §2241 petition that he should receive emergency relief. The Court notes that the petitioner states that he began serving his 37-month sentence on January 27, 2004. He offers no explanation why he waited until March 23, 2006, to seek emergency relief which he wanted to become effective six weeks later, on May 8, 2006. Although the Court would be acting entirely within its rights to dismiss this petition without prejudice for failure to exhaust, the Court will address the merits of the claim, in light of the fact that the petitioner argues he should have been released into a CCC on May 8, 2006.

2. No Protected Liberty Interest in CCC
Placement or in Home Confinement
A. Change in BOP Policy

Prior to December 20, 2002, under its old interpretation of 18 U.S.C. §3624(c), the BOP uniformly designated federal inmates in CCC's for the last 180 days (six months) of their sentences,

4

even if that placement exceeded the last ten percent of their sentences. This policy was known as the "Six Month Policy."

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum ("the OLC Memo") declaring that the Six Month Policy was "unlawful." The OLC Memo concluded that the BOP could not designate a CCC as a place of confinement pursuant to 18 U.S.C. §3621, because a CCC is not a "penal or correctional facility" within the meaning of the statute. The OLC Memo stated a change in the BOP's longstanding interpretation of 18 U.S.C. §3624(c) and its previous policy regarding inmates' placement in CCC's.

On December 20, 2002, the BOP's General Counsel issued a "Memorandum for Chief Executive Officers" entitled "Community Confinement Procedure Changes" ("the December 20, 2002 Memorandum"). Pursuant to the change effected in the December 20, 2002 Memorandum, pre-release into CCC designations became limited to the last 10 percent of the prison sentence, not to exceed six months ("the 10% Rule").

B. Application of Law to Facts

The petitioner has failed to state a claim upon which relief can be granted. Petitioner appears to assert that he has an absolute right to spend the last 10 % of his term of imprisonment in a CCC. That claim fails to state a claim upon which relief can be granted. The petitioner is not entitled to be immediately released into a CCC.

First, the cases which the petitioner cited involved prisoners who had been sentenced prior to the BOP's 2002 change in policy. Those petitioners were therefore able to assert valid *ex post facto* arguments.

Second, state and federal prisoners generally enjoy no constitutional right to placement in a particular penal institution. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Brown-Bey v. United*

*States*, 720 F.2d 467, 470 (7th Cir.1983). Thus, the Attorney General has the power to direct the place of a prisoner's confinement and the authority "to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all." *Brown-Bey*, 720 F.2d at 470.

Third, nothing in §3624 requires or mandates the BOP to place any federal prisoner in a CCC for the final 10 % of his sentence. The language merely authorizes the BOP to *allow* CCC placement "for a *reasonable part* . . . of the last ten percentum of the term." (Emphasis Added) Contrary to the petitioner's argument, 18 U.S.C. §3624(c) does not require pre-release placement in a CCC for any specified period of time. Section 3624(c) requires only that pre-release custody "be served under conditions that will afford the prisoner a *reasonable opportunity* to adjust to and prepare for the prisoner's re-entry into the community." *Id*. (Emphasis Added)

Courts have rejected the claim that §3624(c) creates a protected due process liberty interest and have held that the statute does not encroach upon the BOP's broad discretion and authority to determine where prisoners may be confined during the prerelease period. *United States v. Sneed*, 63 F.3d 381, 389 n.6 (5th Cir. 1995); *Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469-70 (10th Cir.1992), *cert. denied*, 510 U.S. 830 (1993); *see also United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir.1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society.").

While §3624 does employ mandatory language, it relates only to a general guideline to facilitate the prisoner's post-release adjustment through the establishment of some unspecified pre-release conditions. *Prows*, 981 F.2d at 469. Such interpretation is clearly consistent with the broad administrative discretion delegated to the BOP regarding the placement of prisoners. *Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir.1983); *Ready v. Fleming*, 2002 WL

6

1610584, *3 (N. D. Tex. 2002) ("Thus, §3624(c) does not create a constitutionally protected liberty interest, and Ready's halfway-house-placement claim must fail.").

In *Gambino v. Gerlinski*, 96 F. Supp.2d 456, 459-60 (M.D. Pa. 2000), *aff'd*, 216 F.3d 1075 (3rd Cir. 2000) (unpublished table opinion), petitioner Gambino argued that 18 U.S.C. §3624(c) required the BOP to provide him with some amount of time, during the last ten percent of his sentence, in pre-release confinement (*e.g.*, a halfway house or home confinement). The *Gambino* court, citing and relying on *Prows*, concluded that §3624(c) does not create a liberty interest because it "refers to no [mandatory] procedures. It is instead a broadly worded statute setting forth a general policy to guide the prison system." *Id.* at 460 (citing *Badea v. Cox*, 931 F.2d 573, 576 (9th Cir.1991)). The court determined that Gambino had failed to state a claim for relief because he had failed to show that his confinement was in violation of the Constitution or any federal law.

The Southern District of New York has also recently ruled that federal prisoners have no constitutionally protected right to a specific amount of time in CCC placement. *See Distefano v. Federal Bureau of Prisons*, 2004 WL 26999, *4 (S.D. N.Y. March 4, 2004), in which the court issued a writ of mandamus under 28 U.S.C. §1651 compelling the Warden of FCI-Otisville to act promptly and in good faith to *consider* Distefano for placement in a CCC consistent with the BOP's policy prior to December 2002. The court qualified that ruling, however, by stating as follows:

> "This 'ruling does not *require* the Bureau to grant petitioner's request for [CCC] designation, *but only to give that request full and fair consideration.*' *McCarthy* [*v. Doe* 146 F.3d 118, 122-23 (2d Cir. 1998)] . . . . Because Distefano would become eligible for CCC placement on March 13, 2004 under the prior policy, the BOP is directed to *consider* him for placement by that date."

*Distefano*, 2004 WL 396999, at *6 {Emphasis added}. *See also Knish v. Stine*, 347 F. Supp.2d 682, 688 (D. Minn. Nov. 24, 2004) (Knish was not entitled to CCC placement for any particular period

7

of time; proper relief was not to direct Knish's transfer to a CCC, but was instead to direct the BOP to *consider* Knish's transfer to a CCC, using BOP's pre-December 2002 policy considerations).

To the extent the petitioner alleges that the BOP's decisions relating to CCC placement and home confinement violate the Ex Post Facto Clause, that claim is also without merit. Laws, policies, and other actions violate the Ex Post Facto Clause if they punish behavior not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense. *Garner v. Jones*, 529 U.S. 244, 249-50 (2000). The Ex Post Facto clause is implicated where a law punishes retrospectively: "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 31, (1981)).

The BOP's policy change in 2002 changed only the permissible length of CCC and/or in-home confinement, not a prisoner's eligibility for in-home confinement. As there is nothing in the record to suggest that the petitioner has ever been approved for in-home confinement, the length of his in-home confinement is not an issue. In addition, the OLC Memo was authored in December of 2002. The issue of whether a federal inmate is a candidate for in-home confinement is left to the discretion of a CCM.

A review of the "Public Access to Court Electronic Database" ("PACER") reveals that the petitioner was indicted for violations of U.S.C. §1341 (Fraud and Swindles) in the United States District Court for the District of New Jersey in July, 2003, and was sentenced in January, 2004. The petitioner was convicted long after the implementation of the change in the BOP's policy. Thus, the OLC Memo was not retroactively applied to the petitioner, who could not have been considered for either CCC release or for in-home confinement by a CCM until long *after* the implementation of the OLC Memo.

8

Accordingly, the petitioner does not enjoy a constitutionally protected liberty interest in early release on a date certain into either a CCC or home confinement. The term of placement in a CCC is left strictly to the discretion of the BOP. Likewise, the placement of an inmate into home confinement is left to the discretion of the BOP, through the decision of a CCM.

### 3. Injunctive Relief Not Warranted

The Court will briefly discuss the petitioner's request for emergency relief and/or a preliminary injunction allowing him to proceed to a CCC on May 8, 2006 (now past). The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering these factors in relation to the facts in this case, (1) Petitioner Tunnicliffe's likelihood of success on the merits is virtually non-existent given the absence of either a valid due process or an *ex post facto* claim. As to factor (2), while the petitioner has set forth facts which indicate that his family will be subjected to hardship as a result of his inability to obtain a pre-release as early as he wishes, he has not met the criteria of demonstrating "irreparable harm.." The petitioner was sentenced to a relatively short sentence, thirty seven (37) months, twenty-six (26)

9

of which he has already served.[2] The Court is unable to conclude that denying the relief requested will result in *irreparable* injury, which is the standard.

As to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). Finally, the Court is not convinced that the public interest would be served by interfering with the BOP's decision to postpone the petitioner's date for CCC placement.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** that Gary S. Tunnicliffe's petition of habeas corpus is **DENIED**; this action [06-CV-49-HRW] will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This May 15, 2006.



Signed By:
Henry R Wilhoit Jr.
United States District Judge

---

[2] This term excludes reduction in sentence for good time credits.